UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AKINS FOODS, INC.,

        Plaintiff,

    v.

AMERICAN AND FOREIGN INSURANCE CO.,

        Defendant.

CASE NO. C04-2195JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant's Motion for Summary Judgment (Dkt. # 15) and Plaintiff's Motion for Partial Summary Judgment (Dkt. # 18). Having considered all of the papers filed in connection with the motions, and having heard oral argument, the court GRANTS in part and DENIES in part Defendant's motion and GRANTS Plaintiff's motion.

## I. BACKGROUND

Plaintiff Akins Foods, Inc. ("Akins"), a supermarket retailer, filed suit against its insurer, Defendant American & Foreign Insurance Co., seeking indemnification of money

ORDER – 1

stolen by one of its employees, Ivan Longoria, and his friend.  Akins hired Longoria through a placement agency to work at its store in Othello, Washington.  After Longoria completed an initial five-month employment period, Steve Baxter, his supervisor, asked him to submit an employment application to Akins' cashier/bookkeeper, ironically named Lonnie Heist.  Longoria submitted the application in February 2004 which disclosed a prior conviction for grand theft auto.  Baxter alleges that he never received, saw, or read the employment application and that he never knew about Longoria's prior conviction. Baxter Decl. ¶ 4.  On March 21, 2004, Longoria assisted his friend in robbing Akins of $108,280.09.  Although someone else committed the actual robbery, Longoria confessed to assisting with its planning and pled guilty as an accomplice to first-degree robbery.

Prior to the robbery, Defendant issued Akins a commercial crime insurance policy, providing in relevant part:

> **A.  Insuring Agreements**
> Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations:
> **1.  Employee Theft**
> We will pay for loss of or damage to "money," "securities" and "other property" resulting directly from "theft" committed by an "employee," whether identified or not, acting alone or in collusion with other persons.
> * * *
> **3.  Inside the Premises - Theft of Money And Securities**
> We will pay for the loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft," disappearance or destruction.

Paulich Decl. Ex. 1 at 15.  The insurance policy excludes coverage for employee theft:

> **D.  Exclusions**
> 1.  This insurance does not apply to:
> * * *
> **b.  Acts of Employees, Managers, Directors, Trustees Or Representatives**
> Loss resulting from "theft" or any other dishonest act committed by any of your "employees," "managers," directors, trustees or authorized representatives:

ORDER – 2

>>  (1) Whether acting alone or in collusion with other persons; or
>>  (2) While performing services for you or otherwise;
>> except when covered under Insuring Agreement A.1.

Id. at 16. Further, Akins' policy conditions coverage on the following provision; *inter alia*:

> **E. Conditions**
> The following Conditions apply in addition to the Common Policy Conditions:
> **1. Conditions Applicable To All Insuring Agreements**
>> **a. Cancellation As To Any Employee**
>> This insurance is cancelled as to any "employee":
>> (1) Immediately upon discovery by:
>>> (a) You; or
>>> (b) Any of your partners, "members," "managers," officers, directors or trustees not in collusion with the "employee";
>>
>> of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

Id. at 17-18. "Theft" is defined as "the unlawful taking of 'money,' 'securities,' or 'other property' to the deprivation of the Insured." Id. at 22.

On May 5, 2004, Akins completed a proof of loss form describing the amount lost in the robbery and naming Longoria as the defaulting employee. Defendant denied the insurance claim. Akins alleges that the denial of reimbursement caused it to close its Othello store due to financial distress. Akins filed this action in King County Superior Court alleging breach of contract, breach of implied contract, breach of fiduciary duty, tortious bad faith, and violations of the Consumer Protection Act and the Unfair Claims Settlement Practices Act. Having removed this case to federal court, Defendant now seeks summary judgment on all claims. Additionally, Akins moves for partial summary judgement on its breach of contract claim.

ORDER – 3

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment should be granted in an insurance coverage case when (1) there are no facts in dispute and (2) coverage depends solely on the language of the insurance policy.  Stouffer & Knight v. Cont'l Cas. Co., 982 P.2d 105, 109 (Wash. Ct. App. 1999), review denied, 994 P.2d 849 (2000).  Determining whether coverage exists is a two-step process: (1) the insured must show that the loss falls within the scope of the policy's insured losses, and (2) if coverage exists, then the burden shifts to the insurer to show that the loss is excluded by specific policy language.  McDonald v. State Farm Fire & Cas. Co., 837 P.2d 1000, 1003-04 (Wash. 1992).

The interpretation of an insurance policy is a matter of law.  Id. at 1003.  The court must interpret the policy as a whole and give force and effect to each provision of the document.  American Star Ins. Co. v. Grice, 854 P.2d 622, 625 (Wash. 1993).  Courts interpret the language of an insurance policy as it would be understood by the average person.  Id.  If a policy provision is fairly susceptible to two different interpretations, both of which are reasonable, it is ambiguous.  McDonald, 837 P.2d at 1004.  Once the court deems a provision ambiguous, then it will examine applicable extrinsic evidence and if the ambiguity cannot be resolved, then the court will interpret the provision in favor of the insured and against the drafter-insurer.  Weyerhaeuser Co. v. Commercial Union Ins. Co., 15 P.3d 115, 122 (Wash. 2000).

**B.     Interpretation of the Insurance Contract**

   **1.     Proof of Coverage**

As an initial matter, the court finds that Akins has demonstrated that insurance coverage exists. Condition A(1) provides coverage for any loss of money resulting from theft committed by an employee. Further, Condition A(3) covers the loss of money from inside the premises resulting from theft. Here, it is undisputed that Longoria, an Akins employee, stole $108,280.09 from the store. Thus, Akins has satisfied its burden of demonstrating that the loss falls within the scope of the insurance policy. McDonald, 837 P.2d at 1003-04.

   **2.     Employee Theft Exclusion**

Defendant argues that two provisions, Exclusion D(1)(b) and Condition E(1)(a), bar coverage relating to thefts committed by employees. First, Exclusion D(1)(b) exempts coverage for any loss resulting from a theft, or any other dishonest act, committed by any employee, except when covered under Condition A(1). Thus, Exclusion D(1)(b) bars the potential coverage available under Condition A(3) because it is undisputed that Longoria, as Akins' employee, was an accomplice to the robbery. Id. As a result, coverage for Akins' loss exists solely under Condition A(1), unless Defendant proves that the second exclusion, Condition E(1)(a), applies.[1] Condition E(1)(a) bars insurance coverage for any employee discovered to have committed theft or any other

---

[1] The parties also dispute who has the initial burden of proof regarding Condition E(1)(a). Generally, the insured must demonstrate that coverage exists and the insurer must show that an exception to coverage applies. E.g., McDonald, 837 P.2d at 1003-04. Although the policy describes Condition E(1)(a) as a condition "applicable to all insuring agreements," the condition effectively excludes coverage for certain employees from the insurance policy. Therefore, the court finds that Defendant has the burden of demonstrating that the condition applies and that one of the identified Akins officials discovered Longoria's prior conviction.

ORDER – 5

dishonest act before or after becoming employed by Akins. The parties dispute what type of knowledge constitutes "discovery" under the insurance policy.[2]

### 3. Interpretation of "Discovery"

The parties offer competing interpretations of "discovery," an undefined term in the policy.[3] Akins argues that "discovery" requires actual knowledge by the insured, while Defendant contends that constructive knowledge is sufficient. The court finds that "discovery" is susceptible to two different interpretations, both of which are reasonable, and as a result, the court concludes that "discovery" is an ambiguous term.[4] McDonald, 837 P.2d at 1004.

As the parties have not identified any extrinsic evidence that clarifies the meaning of discovery in this context, Washington law requires that "discovery," as an ambiguous term, be construed against the insurer and in favor of the insured. Weyerhaeuser, 15 P.3d at 122. Defendant, in drafting the insurance policy, could have avoided this dispute if it included language that voided coverage when the insured "discovered or reasonably could have discovered" any dishonest act. However, the benefit of hindsight does not resolve the existing ambiguity. Applying Washington law requires the court to construe the ambiguity in favor of the insured. Thus, the court finds that to exclude coverage at least

---

[2] While the parties also dispute the meaning of the phrase "'theft' or any other dishonest act," the court need not reach this issue based on its holding that Akins failed to discover Longoria's prior conviction under the terms of the insurance agreement.

[3] The dictionary definition of "discovery" offers limited light on this issue, and arguably better supports Akins' interpretation. Webster's Third New Int'l Dictionary, 647 (2002) (defining "discovery" as "the act, process, or an instance of gaining knowledge of or ascertaining the existence of something previously unknown or unrecognized").

[4] Although the court is somewhat skeptical that "discovery" includes constructive knowledge, the court notes that even if such a construction is reasonable, then the court must find "discovery" ambiguous and construe it against the drafter insurer. Weyerhaeuser, 15 P.3d at 122. Thus, Defendant gains little ground by arguing that "discovery" includes constructive knowledge.

ORDER – 6

one of the specified Akins officials in the insurance agreement (i.e., partner, member, manager) must have had *actual* knowledge of Longoria's prior theft or dishonest act.  The leading treatise on insurance law supports this interpretation: "A provision that the coverage is terminated as to an employee upon discovery of a fraudulent act is to be strictly construed so that when knowledge of the insured partner is required to make the exclusion operative, actual knowledge of a partner is required." 11 Couch on Ins. § 162:25.

Defendant's alternative argument that Akins acquired actual knowledge of Longoria's prior conviction when Heist, the bookkeeper/cashier, received Longoria's application lacks case authority in the insurance context.  At oral argument, Defendant relied heavily on Denaxas v. Sandstone Court of Bellevue, 63 P.3d 125 (Wash. 2003), for the proposition that an agent's knowledge is imputed to the principal if it is relevant to the agency.[5]  Denaxas involved a real estate transaction where the purchaser alleged that he did not know the correct square footage of the purchased lot at the time of sale.  The court held that the purchaser had constructive knowledge of the discrepancy based on the imputed knowledge of the project architect, and the purchaser's possession of documents, such as the survey and title report, clarifying the correct square footage which he represented reviewing and approving prior to the sale.  Id. at 131.  The court distinguished the case from prior authority holding that the knowledge of a bookkeeper, who performed

---

[5]The additional cases Defendant cites for this proposition are inapposite given that they involve *actual* knowledge of a dishonest act by an officer or store manager, and not the discovery of a dishonest act by a lower-level employee.  See Ritchie Grocer Co. v. Aetna Cas. & Sur. Co., 426 F.2d 499, 500 (8th Cir. 1970) (attributing manager's actual knowledge regarding employee dishonesty to insured company); Alfalfa Electric Co-op., Inc. v. Travelers Indem. Co., 376 F. Supp. 901, 906-07 (W.D. Okla. 1973) (same); E. Udolf, Inc. v. Aetna Cas. & Sur. Co., 573 A.2d 1211, 1213-14 (Conn. 1990) (same); Cooper Sportswear Mfg. Co. v. Hartford Cas. Ins. Co., 818 F. Supp. 721, 724-25 (D.N.J. 1993) (same).

ORDER – 7

a ministerial role, could not be imputed to the principal. Id. at 130-31 (citing Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc., 627 P.2d 1352, 1355 (Wash. Ct. App. 1981)). Here, the record is devoid of information relating to Heist's responsibilities regarding the processing of employment applications, her actual knowledge of Longoria's prior conviction, or any delegation of authority.[6] Further, Heist appears to have performed more of a ministerial role in accepting applications, unlike the architect in Denaxas whose knowledge was imputed to the principal because he played a central role in designing a project that fit the land. Id. at 131. Thus, given the undeveloped factual record, the court refrains from imputing Heist's actual knowledge to Akins under Denaxas.[7]

**C.   Akins' Additional Claims**

Turning to Akins' related claims, the court finds that Defendant did not act in bad faith, or violate the Consumer Protection Act and the Unfair Claims Settlement Practices Act, by denying Akins' claim. Defendant's denial was based on a reasonable interpretation of the insurance agreement. "In order to establish bad faith, an insured is required to show that the breach was unreasonable, frivolous, or unfounded. Bad faith will not be found where a denial of coverage . . . is based upon a reasonable interpretation of the insurance policy." Kirk v. Mt. Airy Ins. Co., 951 P.2d 1124, 1126 (Wash. 1998) (citations omitted). In this action, the parties dispute whether the term "discovery" in the

---

[6]The only information in the record concerning Heist is contained in Baxter's declaration. "I directed Longoria to go speak with Lonnie Heist, a bookkeeper/cashier at the Othello store, about filling out the necessary paperwork for his employment." Baxter Decl. ¶ 3.

[7]Further, the term "you," defined as the Named Insured in the policy, can not be interpreted broadly to apply to all of Akins' employees as that would render the subsequent naming of specific parties superfluous. The court adopts this interpretation to give force and effect to each provision of the insurance agreement. Grice, 854 P.2d at 625.

ORDER – 8

insurance agreement requires actual or constructive knowledge of an employee's prior criminal acts. Given that the definition of "discovery" in the insurance agreement is ambiguous, Defendant's interpretation is not unreasonable, frivolous, or unfounded. Therefore, Defendant's denial did not result from bad faith and the court dismisses this claim.

Akins' claims that Defendant violated the Consumer Protection Act and the Unfair Claims Settlement Practices Act also fail. While Defendant moved for summary judgment on every claim, Akins failed to present any evidence or cite any authority in support of these claims.[8] When challenging a denial of coverage, the insured must show more than incorrect denial. It must show that the denial was "without reasonable justification." Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 87 P.3d 774, 786 (Wash. Ct. App. 2004). Having failed to show that Defendant's denial is "without reasonable justification," the court dismisses Akins' Consumer Protection Act and Unfair Claims Settlement Practices Act claims.

### III.   CONCLUSION

Bound by Washington's rules of construction governing insurance contracts, the court finds that the policy covers Akins' loss and that Defendant's denial of the claim fails to constitute bad faith or violate the Consumer Protection Act and Unfair Claims Settlement Practices Act. Thus, the court GRANTS in part and DENIES in part

---

[8] At oral argument, Akins explained this failure was based on his decision to wait for guidance from the court on the pending summary judgment motions regarding his breach of contract claim. However, a party opposing summary judgment cannot simply rest on its allegations without any significant probative evidence supporting its claims. See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). If Akins required more time to obtain supporting affidavits to bolster its claims, it could have moved for a continuance under Fed. R. Civ. P. 56(f). By not bringing forward sufficient evidence or authority to oppose Defendant's motion for summary judgment, Akins has abandoned its claims.

ORDER – 9

Defendant's Motion for Summary Judgment (Dkt. # 15) and GRANTS Plaintiff's Motion for Partial Summary Judgment (Dkt. # 18).

    Dated this 30th day of August, 2005.

                                                */s/ James L. Robart*

                                                JAMES L. ROBART
                                                United States District Judge

ORDER – 10